## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| KELLY SHEA, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL COLLEGE,<br><br>      Defendant. | Case No. 1:24-cv-11449<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Kelly Shea ("Plaintiff"), on behalf of herself and all others similarly situated, states as follows for her First Amended Class Action Complaint against Defendant, American International College ("AIC" or "Defendant"):

### INTRODUCTION

1.  This class action arises from AIC's failure to protect highly sensitive data.

2.  On or about November 14, 2023, AIC lost control of its computer network which held the personal information of its current and former students stored on it (the "Data Breach"). The breach is believed to have affected at least 11,000 students.

3.  In May 2024, AIC began notifying affected individuals and various State Attorneys General of the Data Breach. (See Exhibit A, AIC's Sample Data Breach Notice, "Breach Notice")

4.  Further investigation revealed that cybercriminals accessed students' personally identifiable information ("PII"), including their names and Social Security numbers. Ex. A.

5.  Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, monitor its agents, contractors, vendors, and suppliers in handling PII, and failed to maintain reasonable

security safeguards or protocols to protect the PII, making it an easy target for cybercriminals.

6.      The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

7.      Plaintiff is a former student and a victim of the Data Breach.

8.      On or about May 8, 2024, Plaintiff received data breach notice from AIC, a copy of which is attached as Exhibit B.

## PARTIES

9.      Plaintiff, Kelly Shea, is a natural person and citizen of Massachusetts, where she intends to remain.

10.     Defendant, American International College, is incorporated in Massachusetts, with its principal place of business at 170 Wilbraham Road, Springfield, Massachusetts.

## JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are over 100 putative Class Members.

12.     This Court has personal jurisdiction over Defendant because it is headquartered in Massachusetts, and regularly conducts business in Massachusetts. At least one class member and Defendant are from different states.

13.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

*AIC*

14.     AIC is a private university located in Springfield, Massachusetts that offers both undergraduate and graduate programs.[1] AIC boasts an annual revenue of $134.6 million.[2]

15.     As such, AIC stores a litany of highly sensitive personal identifiable information ("PII") about its current and former students. However, AIC lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a Data Breach.

16.     As a condition of enrollment with AIC, Plaintiff and Class Members provided AIC with their PII. Defendant used that PII to facilitate its enrollment and to collect payment.

17.     Plaintiff and Class Members were required to provide their PII in order to apply for admission at AIC.

18.     In collecting and maintaining its students' PII, Defendant agreed it would safeguard the data in accordance with state law and federal law.

19.     In collecting and maintaining PII, Defendant implicitly agreed that it will safeguard the data using reasonable means according to state and federal law.

20.     Indeed, AIC states in its Privacy Policy that it does not "sell, trade, or otherwise transfer to outside parties your Personally Identifiable Information unless we provide users with advance notice."[3]

21.     AIC further assures its students that it "is committed to ensuring that your privacy is protected."[4]

---

[1] *About Us*, AIC, https://www.aic.edu/about/ (last visited June 3, 2024).
[2]    *American International College*, ZOOMINFO, https://www.zoominfo.com/c/american-international-college/7443658  (last visited June 3, 2024).
[3] *Privacy Policy*, AIC, https://www.aic.edu/privacy-policy/ (last visited June 3, 2024).
[4] *Id*.

22.    As such, AIC recognized the importance of protecting the PII of its current and former students and the need to prioritize its data security.

23.    Despite recognizing its duty to do so, on information and belief, AIC has not implemented reasonably cybersecurity safeguards or policies to protect student's PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, AIC leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to students' PII.

24.    On information and belief, AIC collects and maintains students' unencrypted PII in its computer systems.

***AIC's Data Breach***

25.    On December 3, 2023, AIC "discovered suspicious activity" on its network.[5]

26.    AIC has admitted that there was in fact "unauthorized access" to its network and that it occurred "between November 14, 2023, and December 3, 2023."[6]

27.    In other words, AIC was unable to detect or stop its Data Brech for a full nineteen (19) days.

28.    In total, the Data Breach exposed the PII of 11,822 individuals (the "Class" or "Class Members").[7]

29.    AIC has disclosed that the "unauthorized actor had the ability to ***access or take*** certain information stored on the network during this period of time."[8]

30.    Thereafter, on May 8, 2024, AIC began notifying Plaintiff and Class Members of

---

[5] *Data Breach Notifications*, MAINE ATTY GEN, available at:
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-
a1252b4f8318/9fc78cd7-3613-4d59-b4e2-682f399ef55a.shtml (last visited Sept. 9, 2024).
[6] *Id*.
[7] *Id*.
[8] *Id*. (emphasis added).

their exposure in the Data Breach.[9] In other words, AIC delayed warning Plaintiff and Class Members for a full one-hundred and fifty-seven (157) days *after* AIC after learning of the breach.[10]

31.    During the 157 days that Plaintiff and Class Members were left in the dark about the breach, they remained vulnerable to identity theft without any warning to monitor their financial accounts or credit reports for unauthorized use of their PII.

32.    In other words, the Data Breach investigation revealed Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its students' highly private information.

33.    Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's PII for theft and sale on the Dark Web.

34.    The PII exposed in the Data Breach was highly sensitive and included:

      a.    names;

      b.    Social Security numbers;

      c.    financial account information;

      d.    driver's license information;

      e.    credit card numbers; and

      f.    debit card numbers.[11]

***The Cybercriminal "nSafe" Has Already Exposed the Data on the Dark Web***

35.    Worryingly, the cybercriminals that obtained Plaintiff's and Class Members' PII appear to be the notorious cybercriminal group "nSafe" (a.k.a. "unSafe").[12] A screenshot of

---

[9] *Id.*
[10] *Id.*
[11] *Data Breach Notification Report*, OFF. CONSUM. AFFS. & BUS. REG., https://www.mass.gov/doc/data-breach-report-2024/download (last visited Sept. 9, 2024).
[12] *American International College*, BREACHSENSE (January 15, 2024) https://www.breachsense.com/breaches/american-international-college-data-breach/.

nSafe's Dark Web webpage is reproduced below.[13]



36.     Critically, this screenshot reveals that nSafe exfiltrated "5000.00" gigabytes of PII.[14] Moreover, the screenshot appears to show that 16,749 individuals have "viewed" nSafe's webpage and the exfiltrated PII contained therein.[15]

37.     A separate screenshot of nSafe's webpage—which appears to have been taken at a later date—shows that **109,085 individuals** have since "viewed" nSafe's webpage.[16] This sharp

---

[13] Paul Bischoff, *American International College notifies 11,800 people of data breach that compromised SSNs*, COMPARITECH (May 9, 2024) https://www.comparitech.com/news/american-international-college-notifies-11800-people-of-data-breach-that-compromised-ssns/.
[14] *Id.*
[15] *Id.*
[16] *Unsafe*, RANSOMLOOK, https://www.ransomlook.io/group/unsafe (last visited September 9, 2024).

increase in exposure suggests that the PII of Plaintiff and Class Members is being rapidly disseminated on the Dark Web.



American International College

Compromised on: October 23, 2022

👁 109085

🔗 website: www.aic.edu

📈 revenue: 135.00M

⚫ country: US

VIEW THE POST →

38.    The involvement of nSafe is significant. Indeed, the global consulting firm KPMG

reported the following:

    a.   "UnSafe/nSafe threat group quietly emerged in November 2022 posting leaks from various databases and breaches on their Telegram channel."[17]

    b.   "They victimized entities from various industries and sizes suggesting motives are opportunistic rather than industry specific."[18]

    c.   "They are known to advertise their operations on open-source platforms[.]"[19]

39.    With the PII secured and stolen by nSafe, the hackers then purportedly issued a ransom demand to AIC. However, AIC has provided no public information on the ransom demand or payment.

40.    On or about May 8, 2024—nearly six months after the Data Breach occurred—AIC finally began notifying some Class Members about the Data Breach.

41.    Despite its duties to safeguard PII, Defendant did not in fact follow industry standard practices in securing students' PII, as evidenced by the Data Breach.

42.    In response to the Data Breach, AIC contends that it "took steps to implement additional safeguards and review [its] policies and procedures relating to data privacy and security." Ex. A. Defendant not only fails to expand on what these "reviews" are, but also fails to identify what steps, if any, have been taken as a result of this Data Breach. Further, these "steps" and any additional modifications made as a result of its review, should have been in place before the Data Breach.

43.    In its Breach Notice, Defendant acknowledged the imminent harm and injury

---

[17] *Cyber Incidents and Intelligence: 2023*, KPMG (March 2024)
https://assets.kpmg.com/content/dam/kpmg/ca/pdf/2024/04/ca-cyber-incidents-and-intelligence-2023-en.pdf.
[18] *Id.*
[19] *Id.*

resulting from the Data Breach and advised victims to "remain vigilant against incidents of identity theft and fraud, to review your account statements, and to monitor your credit reports for suspicious activity." Ex. A.

44.    The Data Breach highlighted Defendant's failure to implement reasonable cybersecurity safeguards and policies to protect students' PII. Despite this, AIC's Data Breach Notice claimed that it "takes the confidentiality, privacy, and security of information in its care seriously." Ex. A.

45.    On information and belief, AIC has offered several months of complimentary credit monitoring services to its victims. However, this does not adequately address the lifelong harm caused by the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers. Additionally, due to Defendant's failure to provide timely and adequate notice, some victims, including Plaintiff, are unable to access the offered credit monitoring.

46.    Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII remains high. Fraudulent activity resulting from the Data Breach may not come to light for years.

47.    Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

48.    On information and belief, AIC failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its students' PII. Defendant's negligence is evidenced by its failure

to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice.***

49.    It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

50.    In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[20]

51.    In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), AIC knew or should have known that its electronic records would be targeted by cybercriminals.

52.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

53.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

54.    In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible

---

[20]    *Data breaches break record in 2021*, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/  (last accessed September 4, 2023).

via the internet.

55.    In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[21]

56.    In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on Dark Web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[22]

57.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published an online "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[23]

58.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities

---

[21]  *High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations*, FBI, https://www.ic3.gov/Media/Y2019/PSA191002  (last accessed September 4, 2023).
[22]  *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET, https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed September 4, 2023).
[23] *Ransomware Guide, U.S.* CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last accessed September 4, 2023).

such as Defendant, (iii) ransomware gangs were leaking corporate information on Dark Web portals, and (iv) ransomware tactics included threatening to release stolen data.

59.    In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of thousands of its current and former students in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

60.    Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

61.    Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its students' Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff's Experience and Injuries***

62.    Plaintiff Kelly Shea is a former student of Defendant and has been identified by AIC as a victim of the Data Breach.

63.    As a condition of enrolling, AIC required Ms. Shea to provide her PII, including at least her name and Social Security Number in order to enroll as a student.

64.    Ms. Shea provided her PII to AIC and trusted that the company would use reasonable measures to protect it according to state and federal law.

65.    Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her about the Breach for nearly six months.

66.    As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's PII to

theft by cybercriminals and sale on the Dark Web.

67.    In fact, Plaintiff ***already*** suffered from identity theft in the fallout of the Data Breach. Specifically:

    a.   in or around July 2024, cybercriminals stole Plaintiff's identity and filed a fraudulent healthcare reimbursement claim using her PII;

    b.   thereafter, Plaintiff's heath insurance company "Cigna" paid the fraudulent claim which was purportedly for COVID-related care and originated out-of-state.

68.    Plaintiff does not recall ever learning or being informed of any other data breach incidents in which her PII was compromised, other than the breach at issue in this case.

69.    Plaintiff suffered actual injury from the exposure of her PII—which violates her rights to privacy.

70.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

71.    As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing her online account passwords, placing a credit freeze through all the three main credit bureaus, and monitoring Plaintiff's credit information.

72.    Plaintiff has already spent and will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and

is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how this Data Breach, including the exposure and loss of her Social Security number, will impact her ability to do so. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

73.     Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties, including the cybercriminal group nSafe. This injury was worsened by Defendant's failure to inform Plaintiff about the Data Breach in a timely fashion.

74.     Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff and the Class Members Face Significant Risk of Continued Identity Theft***

75.     Plaintiff and Class Members have suffered injury from the misuse of their PII that can be directly traced to Defendant.

76.     As a result of AIC's failure to prevent the Data Breach, Plaintiff and the Class Members have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

      a.  The loss of the opportunity to control how their PII is used;

      b.  The diminution in value of their PII;

      c.  The compromise and continuing publication of their PII;

      d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.   Delay in receipt of tax refund monies;

    g.   Unauthorized use of stolen PII; and

    h.   The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

77.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

78.    The value of Plaintiff's and Class Members' PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "Dark Web" internet websites, making the information publicly available, for a substantial fee of course.

79.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

80.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

81.    One such example of criminals using PII for profit is the development of "Fullz" packages.

82.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

83.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and Class Members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

84.    Defendant exposed Plaintiff's and Class Members' PII to criminals, enabling them to engage in illegal activity with its use. Specifically, AII allowed access to and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful practices and tactics such as online account hacking, unauthorized use of financial accounts, identity fraud and fraudulent attempts to open unauthorized financial accounts.

85.    Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused

by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

86.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

87.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

      a.   protect the personal customer information that they keep;

      b.   properly dispose of personal information that is no longer needed;

      c.   encrypt information stored on computer networks;

      d.   understand their network's vulnerabilities; and

      e.   implement policies to correct security problems.

88.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

89.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

90.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

91.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to students' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

92.    Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

93.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

94.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

95.    These frameworks are applicable and accepted industry standards. And by failing

to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

96.    Plaintiff is suing on behalf of herself and the proposed Class ("Class"), defined as follows:

> **All individuals residing in the United States whose PII was compromised in Defendant's Data Breach, including all those who received notice of the breach.**

97.    Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

98.    Plaintiff reserves the right to amend the class definition.

99.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

f.    **Numerosity**. Plaintiff's claim is representative of the proposed Class, consisting of at least 11,000 individuals, far too many to join in a single action;

g.    **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

h.    **Typicality**. Plaintiff's claim is typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

i.    **Adequacy**. Plaintiff will fairly and adequately protect the Class Members' interests. Her interest does not conflict with Class members' interests, and Plaintiff has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on

the Class's behalf, including as lead counsel.

j.    **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

i.    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

ii.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.  Whether Defendant was negligent in maintaining, protecting, and securing PII;

iv.   Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's PII;

v.    Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.   Whether Defendant's Breach Notice was reasonable;

vii.  Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii. What the proper damages measure is; and

ix.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

k.    **Appropriateness**. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case. Plaintiff is not aware of any litigation concerning this controversy already

commenced by others who meet the criteria for class membership described above.

l.      Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

100.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

101.    Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

102.    After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

103.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

104.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

105.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff's and Class Members' PII.

106.    Defendant owed—to Plaintiff and Class Members—at least the following duties

to:

   a. exercise reasonable care in handling and using the PII in its care and custody;

   b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

   c. promptly detect attempts at unauthorized access;

   d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

107. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

108. Additionally, Defendant had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

109. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

110. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a condition of applying for admission at AIC.

111. The risk that unauthorized persons would attempt to gain access to the PII and

misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

112.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff's and Class Members' and the importance of exercising reasonable care in handling it.

113.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

114.    Defendant breached these duties as evidenced by the Data Breach.

115.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by:

        a.   disclosing and providing access to this information to third parties and

        b.   failing to properly supervise both the way the PII was stored, used, and
             exchanged, and those in its employ who were responsible for making that
             happen.

116.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury.

117.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

118.    Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

119.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

120.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CLAIM FOR RELIEF
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

121.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

122.    Defendant offered the prospect of admission at its University to Plaintiff and Class Members if, as a condition of their application for admission, Plaintiff and Class Members provided Defendant with their PII.

123.    In turn, Defendant agreed it would not disclose the PII it collects to unauthorized persons. Defendant also promised to safeguard student's PII.

124.    Plaintiff and the Class Members accepted Defendant's offer by providing PII to Defendant in exchange for enrollment with Defendant.

125.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and

Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

126.    Plaintiff and the Class Members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

127.    Defendant materially breached the contracts it had entered into with Plaintiff and Class Members by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and Class Members by:

    a.  Failing to properly safeguard and protect Plaintiff's and Class Members's PII;

    b.  Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

    c.  Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

128.    The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

129.    Plaintiff and Class Members have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

130.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in

addition to its form.

131.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

132.    Defendant failed to advise Plaintiff and Class Members of the Data Breach promptly and sufficiently.

133.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

134.    Plaintiff and Class Members have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

135.    Plaintiff, on behalf of herself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

136.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

137.    This claim is plead in the alternative to the breach of implied contractual duty claim.

138.    Plaintiff and Class Members conferred a benefit upon Defendant in the use of their PII to facilitate its admission application process and/or provision of educational services.

139.    Plaintiff and Class Members conferred a benefit upon Defendant by paying money via tuition, application fees, admission fees, and/or administrative fees. Plaintiffs and Class Members reasonably understood that a portion of these funds would be used for cybersecurity to protect their PII. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and Class Members.

140.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' PII and money (e.g., tuition, application fees, admission fees, and/or administrative fees) because Defendant failed to adequately protect their PII.

141.    Plaintiff and the Class Members would not have provided their PII had they known Defendant would not adequately protect their PII.

142.    Plaintiff and the Class Members would not have paid (or would have requested not to pay) the full amount of tuition, application fees, admission fees, and/or administrative fees if they had known that Defendant would not use a portion of those fees on cybersecurity to protect their PII.

143.    Defendant should be compelled to disgorge into a common fund to benefit Plaintiff and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

**FOURTH CLAIM FOR RELIEF**
**Invasion of Privacy**
**(On Behalf of the Plaintiff and the Class)**

144.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

145.    Under Massachusetts law, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." M.G.L. c. 214, § 1B.

146.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

147.    Defendant owed a duty to its students, including Plaintiff and the Class, to keep this information confidential.

148.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class

Members' PII is highly offensive to a reasonable person.

149.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant pursuant to their applications for admission and/or receipt of educational services, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

150.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

151.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

152.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

153.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

154.    As a proximate result of Defendant's acts and omissions, the PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

155.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their PII are still maintained by Defendant with its inadequate cybersecurity system and

policies.

156.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

157.    In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FIFTH CLAIM FOR RELIEF**
**Violations of the Massachusetts Consumer Protection Act**
**Mass. Gen.  Laws. Ann. Ch. 93A, §§ 1, *et seq*.**
**(On Behalf of the Plaintiff and the Class)**

158.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

159.    Defendant, Plaintiff and Class Members are "persons" as meant by Mass. Gen. Laws. Ann. Ch. 93A, § 1(a).

160.    Defendant engages in "trade or commerce" under Mass. Gen. Laws. Ann. Ch. 93A, § 1(b).

161.    Defendant advertised, offered, or sold goods or services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

162.    Defendants engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Mass. Gen. Laws Ann. Ch. 93A, § 2(a), including by:

> a.   failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' PII, which was a direct and proximate

cause of the Data Breach;

b.    failing to identify foreseeable security and privacy risks, remediate identified

security and privacy risks, and adequately improve security and privacy

measures following previous cybersecurity incidents, which was a direct and

proximate cause of the Data Breach;

c.    failing to comply with common law and statutory duties pertaining to the

security and privacy of Plaintiff's and Class Members' PII, including duties

imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and

the GLBA, 15 U.S.C. § 6801, *et seq*., which was a direct and proximate cause

of the Data Breach;

d.    omitting, suppressing, and concealing the material fact that it did not

reasonably or adequately secure Plaintiff's and Class Members' PII; and

e.    omitting, suppressing, and concealing the material fact that it did not comply

with common law and statutory duties pertaining to the security and privacy

of Plaintiff's and Class Members' PII, including duties imposed by the FTC

Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C.

§ 6801, *et seq*.

163.    Defendant's omissions were material because they were likely to deceive

reasonable consumers about the adequacy of Defendant's data security and ability to protect the

confidentiality of their PII.

164.    Defendant intended to mislead Plaintiff and Class Members and induce them to rely

on its omissions.

165.    Had Defendant disclosed to Plaintiff and Class Members (or their third-party

agents) that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

166.    Defendant accepted the PII that Plaintiff and Class Members entrusted to it while keeping the inadequate state of its security controls secret from the public.

167.    Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

168.    Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class Members' rights.

169.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

170.    On information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

171.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law.

### SIXTH CAUSE OF ACTION
### Declaratory Judgment
### (On Behalf of Plaintiff and the Class)

172.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

173.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

174.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

175.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a.    Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

      b.    Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

      c.    Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

      d.    Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class Members.

176.    The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

177.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

178.    And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy

at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class Members' injuries.

179.    If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

180.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class Members, and the public at large.

## PRAYER FOR RELIEF

Plaintiff and Class Members demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the Class Members, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.    Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demands that this matter be tried before a jury.

Dated: September 16, 2024

Respectfully Submitted,

/s/ *Cassandra P. Miller*
Cassandra P. Miller (*Pro Hac Vice*)
Samuel J. Strauss *
Raina Borelli *
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
cmiller@straussborrelli.com
sam@straussborrelli.com
raina@straussborrelli.com

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
T: (617) 485-0018
anthony@paronichlaw.com

* *Pro Hac Vice* Forthcoming
*Attorneys for Plaintiff and Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Cassandra Miller, hereby certify that on September 16, 2024, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record, below, via the ECF system.

Ben N. Dunlap, BBO #661648
bdunlap@fmglaw.com
Freeman Mathis & Gary, LLP
60 State Street, Suite 600
Boston, MA 02109-1800
Tel. (617) 963-5973

DATED this 16th day of September, 2024.

STRAUSS BORRELLI PLLC

<u>/s/ Cassandra P. Miller</u>
Cassandra P. Miller (*Pro Hac Vice*)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
cmiller@straussborrelli.com