UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KELLY SHEA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL, COLLEGE,<br><br>Defendant. | Civil Action No. 1:24-CV-114499-AK |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiff Kelly Shea brings this putative class action against American International College ("AIC") arising from a 2023 data breach in which unauthorized actors allegedly accessed and exfiltrated sensitive personally identifiable information ("PII") of current and former AIC students.  Shea asserts claims for negligence (Count I), breach of implied contract (Count II), unjust enrichment (Count III), invasion of privacy under G.L. c. 214, § 1B (Count IV), a claim under G.L. c. 93A (Count V), and declaratory judgment (Count VI).  AIC moves to dismiss the action under Rules 12(b)(1) and (6) of Federal Rules of Civil Procedure, arguing that Shea lacks standing to sue and fails to state any claim upon which relief can be granted.  For the reasons below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.      BACKGROUND**

The following facts are drawn from the Amended Complaint [Dkt. 14] and are accepted as true for purposes of this motion.

1

Shea attended AIC as a student. [Id. at ¶ 7]. AIC requires students to provide sensitive PII as a condition of enrollment, including Social Security numbers, dates of birth, driver's license numbers, and financial account information. [Dkt. 14 at ¶¶ 16-17, 34]. Shea alleges that AIC represented, through policies and practices, that it would safeguard such information. [Id. at ¶¶ 18-22]. Between November and December 2023, cybercriminals allegedly infiltrated AIC's systems and exfiltrated a dataset containing student PII. [Id. at ¶¶ 26, 28]. The attackers allegedly accessed approximately 5,000 gigabytes of unencrypted data, including the PII described above, and the intrusion went undetected for roughly 19 days. [Id. at ¶¶ 26–27, 36]. On December 3, 2023, AIC detected suspicious network activity and engaged a third-party cybersecurity firm to investigate. [Dkt. 16 at 2]. In January 2024, the hacker group "nSafe" publicly claimed responsibility for the breach on a site on the dark web, allegedly posting a sample of the stolen data for sale and identifying AIC as the source. [Dkts. 24 at 2; 14 at ¶ 35]. Shea alleges that the posting has been viewed over 100,000 times. [Dkt. 14 at ¶¶ 36, 37]. The PII of over 11,000 current and former students had been accessed. [Id. at ¶ 28].

On May 8, 2024, approximately 157 days after discovering the incident, AIC mailed written breach notification letters to affected individuals. [Id. at ¶¶ 28, 30; Dkt. 16 at 2]. Shea alleges that two months later, her health insurer paid a fraudulent COVID-related claim submitted using her PII. [Dkt. 14 at ¶ 67]. She further alleges out-of-pocket mitigation expenses, anxiety and sleep disruption, and an ongoing risk of identity theft. [Id. at ¶ 69-73]. Shea contends that AIC ignored well-known cybersecurity risks, failed to comply with industry and Federal Trade Commission guidelines, and unreasonably delayed notification, thereby increasing the risk and severity of identity theft. [Dkt. 14 at ¶¶ 73, 75-95]. She seeks declaratory and injunctive relief; compensatory, exemplary, punitive, and statutory damages; restitution; and

attorneys' fees and costs.  [Id. at 33-34].

AIC moves to dismiss the Amended Complaint in its entirety.  [Dkt. 15].  On lack of standing, AIC argues that the only alleged misuse of Shea's PII is not fairly traceable to the 2023 breach.  [Dkt. 16 at 3].  On the merits, AIC contends that: (1) the negligence claim is barred by the economic loss doctrine [id. at 8-9]; (2) the implied contract claim fails for lack of facts showing mutual assent to provide data security [id. at 9-10]; (3) the unjust enrichment claim fails because Shea did not pay a specific fee for data security [id. at 10]; (4) the invasion of privacy claim fails because § 1B requires intentional conduct and Shea alleges, at most, negligence [id. at 10-11]; (5) the Chapter 93A claim fails for failure to serve the required 30-day demand letter [id. at 11]; and (6) the declaratory judgment claim fails because it depends on the aforementioned deficient counts [id. at 11-12].  Shea opposes dismissal, asserting that she has adequately pled standing and that her claims are legally sufficient.  [Dkt. 24 at 4, 10].  She voluntarily dismisses Count V without prejudice.  [Id. at 15].  Shea also maintains her request for declaratory relief, citing the ongoing risk posed by PII that remains in AIC's possession.  [Id. at 15-16].

## II.  LEGAL STANDARD

"When faced with motions to dismiss under both [Federal Rules of Civil Procedure] 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first."  Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995).  A dismissal under Rule 12(b)(1) is jurisdictional and, because it is not on the merits, carries no res judicata effect.  Id.

### A.  Rule 12(b)(1) – Subject-Matter Jurisdiction and Standing

A motion under Rule 12(b)(1) challenges the court's subject-matter jurisdiction.  See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001).  Such a motion may present

either a sufficiency or a factual challenge. See id. at 363. In assessing a sufficiency challenge, the court credits the plaintiff's well-pleaded jurisdictional allegations, draws all reasonable inferences in the plaintiff's favor, and decides the motion accordingly. Id. For a factual challenge, if the defendant controverts the accuracy of the jurisdictional facts, the allegations are entitled to no presumptive weight, and the court may consider materials submitted by both sides to resolve the disputed jurisdictional facts. Id.

### B. Rule 12(b)(6) – Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions "couched" as factual allegations are disregarded. Id. In evaluating a Rule 12(b)(6) motion, the court may consider "documents incorporated by reference into the complaint, public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). Reading the complaint "as a whole," the court undertakes a context-specific, two-step inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, it separates factual allegations from conclusory legal statements, accepting the former as true and disregarding the latter. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, it determines whether the well-pleaded facts permit a "reasonable inference that the defendant is liable for the misconduct alleged." Haley, 657 F.3d at 46 (citation omitted). If the facts alleged are sufficient to state a cause of action, the motion to dismiss must be denied. Back Beach Neighbors Comm. v. Town of Rockport, 535 F. Supp. 3d 57, 62 (D. Mass. 2021).

### III. Jurisdiction and Article III Standing

Standing under Article III of the Constitution is a threshold jurisdictional requirement that must be satisfied before the Court may reach the merits. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must plausibly allege: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 560–61; Webb v. Injured Workers Pharmacy, LLC, 72 F. 4th 365, 372 (1st Cir. 2023). At the pleading stage, general factual allegations may suffice if they plausibly suggest each element of standing, and the court must accept well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. SPARTA Ins. Co. v. Pennsylvania Gen. Ins. Co., 621 F. Supp. 3d 169, 175 (D. Mass. 2022); Connor B. ex rel. Vigurs v. Patrick, 771 F. Supp. 2d 142, 151 (D. Mass. 2011).

AIC contends that Shea cannot meet these standing requirements because there is no causal link between the late-2023 breach it disclosed and the only alleged misuse of her data: a fraudulent COVID-related health insurance claim in July 2024. [Dkt. 16 at 3-4]. AIC argues that Shea never provided it with health insurance information, none was exposed in the breach, and her theory that stolen PII could be used to file such a claim is speculative. [Dkts. 16 at 5; 27 at 1-2]. AIC further asserts that her allegations regarding data on the dark web relate to a separate October 2022 incident, creating a "complete data mismatch that defeats traceability." [Dkt. 27 at 2-3]. The Court addresses each element of standing in turn.

#### A. Injury in Fact

Shea alleges two forms of concrete harm. First, she identifies an actual misuse event: payment of a fraudulent health insurance claim using her stolen PII. [Dkt. 14 at ¶ 67]. Second,

5

she alleges that she expended time and money on mitigation measures, including credit monitoring and enhanced security protocols, and that she suffered anxiety and sleep loss because of the breach. [Id. at ¶¶ 71-72]. The First Circuit has recognized that both actual misuse of compromised data, such as a fraudulent claim, and lost time and expenses incurred to mitigate breach-related risks constitute concrete harm. Webb, 72 F.4th at 376–77; see also In re LastPass Data Sec. Incident Litig., 742 F. Supp. 3d 109, 121 (D. Mass. 2024). By contrast, a bare risk of future harm, without accompanying misuse or mitigation efforts, is insufficient. TransUnion LLC v. Ramirez, 594 U.S. 413, 437–38 (2021). Here, Shea's allegations go beyond speculation: she pleads a discrete fraudulent payment, describes specific emotional distress symptoms, and details mitigation expenses. These allegations satisfy the injury-in-fact requirement.

### B. Traceability

Shea has also plausibly alleged that her injuries are fairly traceable to AIC's 2023 breach. She claims that AIC's compromised network contained sensitive identifiers, including Social Security numbers, dates of birth, and financial account data [Dkt. 14 at ¶ 34]; that in January 2024, the hacking group "nSafe" publicly trafficked that same dataset [Dkt. 24 at 2]; and that a few months later, Cigna paid a claim using those identifiers [Dkt. 24 at 3]. Taken as true, these allegations make it plausible that the 2023 breach was the source of the data used in the fraudulent claim. The fact that other data appeared on the dark web in 2022 does not, at this stage, negate the reasonable inference that the 2023 breach was a substantial factor in the misuse alleged. AIC's contention that the connection is "too attenuated" raises a factual dispute inappropriate for resolution on a motion to dismiss.

### C. Redressability

Finally, Shea's requested relief would redress her alleged injuries. She seeks monetary

6

damages to compensate for the fraudulent claim, mitigation expenses, and damages for emotional distress, as well as injunctive relief requiring AIC to implement specific cybersecurity measures to prevent future misuse. [Dkt. 14 at 33-34]. While the Court cannot restore her stolen personal data, the relief sought directly addresses the consequences of the breach and would remedy the harms alleged. There is no serious dispute that the Court has authority to award these forms of relief.

Shea has plausibly alleged each element of Article III standing. The fraudulent claim and mitigation efforts establish concrete injury; the alleged chain of events linking those harms to the 2023 breach satisfies traceability; and the requested relief would redress her injuries. Standing is therefore satisfied, and the Court proceeds to consider the sufficiency of the claims under Rule 12(b)(6).

## IV. The Merits of the Claims

AIC next argues that, even if standing exists, each substantive claim fails under Rule 12(b)(6). The Court addresses each claim in turn.

### A. Count I – Negligence

Under Massachusetts law, a negligence claim requires the plaintiff to plausibly allege: (1) a duty of care owed by the defendant; (2) breach of that duty; (3) causation, meaning the breach was both the factual and proximate cause of the plaintiff's injury; and (4) damages. Coyle v. DJD Med., Inc., No. 21-CV-12048-ADB, 2022 WL 267437, at *3 (D. Mass. Jan. 28, 2022) (quoting Primus v. Galgano, 329 F.3d 236, 241 (1st Cir. 2003)). Whether a duty exists is a question of law. Andrade v. Baptiste, 583 N.E.2d 837, 840 (Mass. 1992). The Court addresses each element before considering AIC's separate defense under the economic loss doctrine.

*1. Duty*

Shea alleges that, as a condition of admission, AIC required students to provide sensitive PII, including Social Security numbers, driver's license numbers, dates of birth, and financial account data. [Dkt 14. at ¶ 34]. She asserts that AIC promised to protect this information under state and federal law and in its privacy policy, but failed to do so. [Dkt. 14 at ¶¶ 19-20]. Massachusetts law generally imposes no duty to protect another from the criminal acts of a third party absent foreseeable harm. In re MAPFRE Data Disclosure Litig., No. 1:23-CV-12059-IT, 2025 WL 975669, at *12 (D. Mass. Mar. 31, 2025) (quoting Jupin v. Kask, 447 Mass. 141, 148, 849 N.E.2d 829, 836 (2006)). In the data breach context, courts have held that entities assuming responsibility for safeguarding sensitive PII owe a specific obligation to implement reasonable security measures. Portier v. NEO Tech. Sols., No. 17-CV-30111, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019). Accepting the allegations as true, AIC's collection and storage of Shea's PII gave rise to a duty to employ reasonable measures to protect it from unauthorized access.

*2. Breach*

The Amended Complaint alleges that AIC breached its duty by failing to adhere to industry-recognized best practices for data security, including failing to educate employees on cybersecurity protocols, omitting multi-factor authentication, maintaining weak password rules, operating with substandard firewall and anti-malware protections, and failing to encrypt stored PII. [Dkt. 14 at ¶¶ 23-24, 58-59, 86-87, 92–94]. Courts have recognized that such allegations can plausibly support a finding of unreasonable care. Weekes v. Cohen Cleary P.C., 723 F. Supp. 3d 97, 103 (D. Mass. 2024). Taken as true, these allegations plausibly support the inference that AIC's cybersecurity program fell below the standard of reasonable care required

8

for an institution handling sensitive PII, particularly in the higher education context.

### 3. Causation

Shea alleges that, but for AIC's failures, her PII would not have been compromised and sold by the hacking group "nSafe," and that this led to a fraudulent COVID-related insurance claim. [Dkt. 14 at ¶¶ 26-34, 67, 101-20]. She further alleges that her mitigation expenditures (credit monitoring and security services) and emotional distress (anxiety and sleep loss) flowed directly from the breach and the fraudulent claim. [Id. at ¶ 119]. Massachusetts law recognizes such harms as cognizable when they are the ordinary, foreseeable results of the risk created. Kent v. Com., 437 Mass. 312, 320, 771 N.E.2d 770, 776–77 (2002). These allegations plausibly establish both factual and proximate causation.

### 4. Economic Loss Doctrine

The economic loss doctrine generally bars recovery in negligence for purely economic losses absent personal injury or property damage. Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 46 (Mass. 2009). An exception exists where the plaintiff plausibly alleges personal injury, which can include sufficiently concrete emotional distress. Sullivan v. Boston Gas Co., 605 N.E.2d 805, 810 (Mass. 1993); Maio v. TD Bank, N.A., No. 22-CV-10578, 2023 WL 2465799, at *4 (D. Mass. Mar. 10, 2023).

Shea alleges both emotional distress tied to the fraudulent misuse of her PII and mitigation expenses. At this stage, her emotional distress allegations plausibly qualify as personal injury under the exception. Accordingly, the negligence claim survives as to emotional distress damages and any economic losses directly resulting from that injury, but is dismissed to the extent it seeks recovery for other purely economic mitigation costs.

### B. Breach of Implied-in-Fact Contract (Count II)

An implied-in-fact contract requires the same elements as an express contract, including offer, acceptance (mutual assent), and consideration, but mutual assent may be inferred from the parties' conduct and relationship. T.F. v. B.L., 813 N.E.2d 1244, 1249 (Mass. 2004). The plaintiff must plead the existence of such a contract with "substantial certainty." Durbeck v. Suffolk Univ., 547 F. Supp. 3d 133, 145 (D. Mass. 2021). General statements in privacy policies, without allegations of affirmative acceptance, typically do not suffice. In re Shields Health Care Grp., Inc., 721 F. Supp. 3d 151, 162-63 (D. Mass. 2024) ("Plaintiffs must allege sufficient facts to permit an inference that the parties reciprocally agreed to enter into an agreement based on the online privacy statement.").

Shea alleges that AIC required her to provide PII as a condition of enrollment and that its privacy policy promised not to transfer such information without notice. [Dkt. 14 at ¶¶ 17, 20]. She does not allege affirmative acceptance of these assurances or conduct by AIC establishing mutual assent to contractual terms. Unlike in In Re Shields, there is no special statutory or fiduciary overlay here that might bolster an inference of mutual assent. This specific ruling addresses only implied-in-fact contracts and does not foreclose recovery under an implied-in-law theory, such as unjust enrichment which is analyzed separately below. Because Count II in the Amended Complaint fails to allege facts showing mutual assent with the required certainty, the breach of implied-in-fact contract claim is **DISMISSED**.

### C. Unjust Enrichment (Count III)

To state a claim for unjust enrichment, a plaintiff must allege: (1) a benefit conferred on the defendant; (2) the defendant's knowledge of the benefit; and (3) retention of the benefit under circumstances making it inequitable without payment. In re Shields, 721 F. Supp. 3d at

165 (quoting Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc., 210 F. Supp. 3d 294, 309 (D. Mass. 2016)).). Whether a benefit is "unjust" turns on the reasonable expectations of the parties. Metro. Life Ins. Co. v. Cotter, 464 Mass. 623, 984 N.E.2d 835, 850 (2013). Although damages for breach of contract and unjust enrichment are mutually exclusive, they may be pled in the alternative. Chang v. Winklevoss, 95 Mass. App. Ct. 202, 123 N.E.3d 204, 212 (2019); Mass. R. Civ. P. 8(e)(2). In Webb, the court dismissed an unjust enrichment claim where plaintiffs alleged only that payments implicitly included data protection, without facts showing any portion was allocated to cybersecurity. 2023 WL 5938606 at *4. In In re Shields, the court allowed the claim where plaintiffs plausibly alleged that part of their fees was reasonably expected to fund adequate data security. 721 F. Supp. 3d at 165.

Shea alleges she conferred monetary and informational benefits on AIC (tuition, fees, PII), reasonably expected that part of her payments would fund cybersecurity, and that AIC retained these benefits while failing to provide reasonable data security. [Id. at ¶¶ 22-23, 32-33, 67, 72, 138-39]. These allegations are analogous to In re Shields: Shea alleges a relationship in which the nature of the transaction (here, between a higher education institution and its students) supports the inference that part of the fees paid necessarily covered the cost of safeguarding sensitive personal information collected as a condition of enrollment. While she does not allege a separate "cybersecurity fee," she pleads a reasonable expectation, grounded in the nature of the transaction, that such protections were included in the services for which she paid. At the pleading stage, these allegations are sufficient to state a claim for unjust enrichment. The motion to dismiss the unjust enrichment claim in Count III is therefore **DENIED**.

### D. Invasion of Privacy (G.L. c. 214, § 1B) (Count IV)

Section 1B protects against "unreasonable, substantial or serious interference" with an

individual's privacy.  MASS. GEN. LAWS. ch. 214 § 1B.  A plaintiff must plead: (1) a gathering and dissemination of facts of a private nature; and (2) that the invasion resulted in an unreasonable, substantial, or serious interference with privacy.  Webb, 2023 WL 5938606, at *5 (quoting Nelson v. Salem State Coll., 845 N.E.2d 338, 348 (Mass. 2006)).  Invasion of privacy is an intentional tort, requiring purposeful conduct by the defendant.  Elliott-Lewis v. Abbott Labs., 378 F. Supp. 3d 67, 71 (D. Mass. 2019).

Here, Shea attributes the intrusion to nSafe, a third-party hacking group, which accessed and disseminated her PII.  [Dkt. 14 at ¶ 35-39].  She alleges no facts suggesting that AIC itself gathered or disseminated her private information, or otherwise acted intentionally to intrude upon her privacy.  While she proposes that § 1B can be satisfied by the gathering or dissemination of private facts, Webb did not dispense with the requirement of intentional conduct.  Although her allegations of emotional distress and mitigation expenses may satisfy the "substantial or serious interference" prong, the absence of purposeful conduct by AIC is dispositive.  Because Shea has not alleged intentional acts by AIC that resulted in the gathering or dissemination of her private information, Count IV fails as a matter of law and is **DISMISSED**.

### E.  Declaratory Judgment (Count VI)

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, provides a remedy but not an independent basis for jurisdiction.  28 U.S.C. §§ 2201–2202.  To proceed, there must be an "actual controversy" of sufficient immediacy and reality.  Id.  Even when that standard is met, granting relief is discretionary.  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534–35 (1st Cir. 1995).  In the data breach context, courts have found allegations of ongoing risk and continuing mitigation efforts sufficient to satisfy § 2201(a).  Hameed-Bolden v. Forever 21

Retail, Inc., No. CV 18-03019, 2018 WL 6802818, at *9 (C.D. Cal. Oct. 1, 2018).

Shea alleges that her PII remains publicly accessible via nSafe's dark web posting and in AIC's possession, creating an ongoing risk of misuse. [Dkt. 14 at ¶¶ 73, 78, 174-75]. She also alleges continued mitigation costs and emotional distress. [Dkt. 14 at ¶ 72]. These allegations plausibly establish a live controversy of sufficient immediacy and reality. While the Court retains discretion to withhold declaratory relief, allowing the claim to proceed at this stage will permit factual development on AIC's remedial measures and the persistence of risk. Accordingly, the motion to dismiss the request for declaratory relief in Count VI is **DENIED.**

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Dkt. 15] is **GRANTED IN PART** and **DENIED IN PART**. The Court concludes that Plaintiff has plausibly stated claims for negligence (Count I), unjust enrichment (Count III), and declaratory judgment (Count VI). The Motion is therefore **DENIED** as to those claims, which will proceed to discovery.

The Motion is **GRANTED** as to the breach of implied contract (Count II) and invasion of privacy claims (Count IV), which are **DISMISSED** in their entirety.

Plaintiff has **VOLUNTARILY DISMISSED** Count V.

**SO ORDERED**.

Dated: September 5, 2025                                     /s/ Angel Kelley
                                                             Hon. Angel Kelley
                                                             United States District Judge