**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **KELLY SHEA**, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**AMERICAN INTERNATIONAL COLLEGE**,<br><br>    Defendant. | Case No. 1:24-cv-11449-AK<br><br>Hon. Angel Kelley |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**
<u>**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**</u>

I.      **INTRODUCTION**

Between November 14, 2023, and December 3, 2023, American International College ("AIC" or "Defendant") experienced a data security incident that affected the Personal Information[1] of approximately 11,822 individuals (the "Data Incident"). Plaintiff Kelly Shea, a former student of Defendant and a victim of the Data Incident, commenced the above-captioned litigation on June 4, 2024 (ECF No. 1), and later amended her complaint on September 16, 2024 (ECF No. 14). Plaintiff sought relief from AIC for its role in the alleged compromise of class members' Personal Information. After briefing AIC's motion to dismiss and engaging in three months of hard-fought negotiations, the Parties eventually reached an agreement in principle to resolve the Action.

Plaintiff now, by and through her counsel, presents this Unopposed Motion for Preliminary Approval of the Class Action Settlement ("Motion"). *See* Settlement Agreement ("S.A."), attached as **Exhibit 1** to the Declaration of Cassandra P. Miller ("Miller Decl.") filed herewith. The Settlement is structured to provide significant relief to the approximately 11,822 individuals whose Personal Information was potentially impacted in the Data Incident by establishing a non-reversionary Settlement Fund of $315,000. The Settlement Fund is structured to provide: (1) a *Pro Rata* Cash Fund Payment to Settlement Class Members estimated at $50; (2) reimbursement for Out-of-Pocket Losses incurred as a result of the Data Incident up to $5,000, (3) two years of Credit Monitoring Services for all Settlement Class Members; (4) Notice and Administrative Expenses; and (5) court-approved attorneys' Fee Award and Costs and a Service Award for Plaintiff. If approved, the Settlement will bring certainty, closure, and significant and valuable relief to those

---

[1] Unless otherwise noted, all capitalized terms have the meanings ascribed to them in the Settlement Agreement.

individuals as opposed to what otherwise would likely be contentious and costly litigation over AIC's alleged failure to adequately safeguard the Personal Information of its current and former students.

Plaintiff Kelly Shea now seeks preliminary approval of the Settlement, certification of a Settlement Class, appointment of Class Counsel, and approval of the proposed form and method of class notice. This memorandum describes in detail the reasons why preliminary approval is in the best interests of the Settlement Class Members and is consistent with Federal Rule 23. As discussed in more detail below, the proposed class should be certified and the settlement preliminarily approved so that notice may issue to the class.

## II.      RELEVANT BACKGROUND

### A.  American International College

AIC is a private university located in Springfield, Massachusetts that offers both undergraduate and graduate programs. Plaintiff's First Amended Class Action Complaint ("FAC") (ECF No. 34) ¶ 14. As a large educational institution, AIC stores a litany of highly sensitive personal identifiable information ("PII") about its current and former students." *Id.* ¶ 15.

Plaintiff and members of the proposed class are current and former AIC students. *See id.* ¶¶ 16-17, 62-64. As a condition of enrolling as students, they provided AIC with their Personal Information including: names, Social Security numbers financial account information, driver's license information, credit card numbers, and debit card numbers. *Id.* ¶ 34.

### B.  The Data Incident

On or about December 3, 2023, AIC discovered suspicious activity on its computer network. *Id.* ¶ 31. Defendant launched an investigation, which revealed that the unauthorized third party had the ability to access or take certain Personal Information stored on AIC's network

between November 14, 2023, and December 3, 2023. *Id*. ¶¶ 26-29. Plaintiff alleged that a cybercriminal group was responsible for the Data Incident. *Id*. ¶¶ 35-39. Plaintiff received a notice letter from AIC that her Personal Information was affected by the Data Incident. *Id*. ¶ 62.

### C.  Procedural History

On June 4, 2024, Plaintiff Kelly Shea filed her original class action complaint in the District of Massachusetts. (ECF No. 1). Plaintiff brought claims for negligence, breach of implied contract; unjust enrichment, invasion of privacy, violation of the the of the Massachusetts Consumer Protection Act, Mass. Gen. Laws. Ann. Ch. 93A, §§ 1, *et seq*.

On August 30, 2024, AIC moved to dismiss Plaintiff's original complaint. (ECF Nos. 12-13). After, on September 16, 2026, Plaintiff filed her FAC (ECF No. 14), which AIC moved to dismiss on September 30, 2024. (ECF Nos. 15-16). The Parties fully briefed AIC's motion, and on September 5, 2025, the Court granted the motion in part and denied it in part, allowing Plaintiff's claims for negligence, breach of contract, and request for injunctive relief to proceed. (ECF. No. 28). AIC filed an answer to Plaintiff's FAC on September 30, 2025. (ECF No. 31).

### D.  History of Negotiations

Recognizing the risks of protracted litigation, in mid-September 2025, the parties began to discuss settlement. Miller Decl. ¶ 5. Pursuant to their negotiations, Plaintiff's counsel requested, and Defendant produced, key information to inform the settlement negotiations, including without limitation the size of the Settlement Class, the type of Personal Information affected, and AIC's response to the Data Incident. *Id*. This information allowed Plaintiff's counsel to be well-informed prior to engaging in settlement discussions. *Id*.

From on or around September 2025 to December 2025, the Parties engaged in hard-fought settlement negotiations. *Id*. ¶ 6. In their negotiations, the Parties summarized the key legal issues,

set forth their positions and provided a damages analysis. *Id*. Thus, the Parties were well versed on the strengths and weaknesses of their case. *Id*. The Parties negotiated at "arm's length," communicating their positions and evaluating the strengths and weaknesses underlying their claims and defenses. *Id*.

On or around December 22, 2025, the Parties agreed on the key terms of the Settlement. *Id*. ¶ 7. In the following months, the Parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator. *Id*. While negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both Parties forcefully advocating the position of their respective clients. *Id*. ¶ 8. From the start, the Parties agreed they would not negotiate proposed Class Counsel's attorney fees or Plaintiff's Service Award until after they agreed on the settlement agreement's core terms, thus avoiding conflict between Plaintiff and the Settlement Class. *Id*. Plaintiff's counsel is confident that the Settlement terms are fair, reasonable, adequate, and provide significant relief to Settlement Class Members. *Id*.

## III.    THE PROPOSED SETTLEMENT

### A.    The Settlement Class

The proposed Class is defined as:

> the persons who are identified on the Settlement Class List, which includes all individuals residing in the United States whose Personal Information was potentially compromised in the Data Incident discovered by Defendant in November 2023, including all those individuals who received notice of the Data Incident

S.A. ¶ 39. The Settlement specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest; and (3)

Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*. The Class is comprised of approximately 11,414 individuals. Miller Decl. ¶ 5

### B. The Settlement

The Settlement negotiated on behalf of the Class provides for the creation of a non-reversionary common fund in the amount of $315,000. S.A. ¶ 42. The fund is structured to provide cash benefits to Settlement Class Members, as well as the costs of notice and administration, and court approved attorneys' Fees and Expense Award and Service Awards. *See id*. ¶¶ 48-49, 91, 93.

#### 1. *Cash Benefits*

Settlement Class Members may submit a claim for a *Pro Rata* Cash Payment from the Net Settlement Fund, estimated at $50, by submitting a Claim Form to the Settlement Administrator no later than the Claims Deadline. *Id*. ¶ 59. The *Pro Rata* Cash Payment may be increased or decreased based on the number of valid claims submitted for this settlement benefit. *Id*.

As an alternative to the *Pro Rata* Cash Payment, Settlement Class Members may submit a claim for Out-of-Pocket Losses up to $5,000. *Id*. ¶ 60. Out-of-Pocket Losses" are unreimbursed costs or expenditures that are fairly traceable to the Data Incident including: (i) costs incurred as a result of identity theft or identity fraud; (ii) costs incurred on or after November 14, 2023, associated with purchasing credit monitoring or identity theft protection services; and (iii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id*. To claim reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit documentation supporting their claim. *Id*.

#### 2. *Credit Monitoring Services*

All Settlement Class Members are eligible to enroll in 2 years of Credit Monitoring Services provided by CyEx. *Id*. ¶ 61. These services include one-bureau credit monitoring, dark

web monitoring, real-time inquiry alerts, and $1 million in identity theft insurance, among other features. *Id*. ¶ 11.

### 3. *Equitable Relief*

In addition to the monetary relief, AIC has confirmed that it has made certain changes to its information security, valued at approximately $65,000.00, and will attest to these changes in a confidential declaration provided to proposed Class Counsel in support of the Settlement. *Id*. ¶ 63. Costs associated with these security-related measures should be paid by Defendant separate and apart from other settlement benefits and separate and apart from the Settlement Fund. *Id*. ¶ 63.

### 4. *Release*

The release in this case is tailored to the claims that have been plead or could have been plead related to the Data Incident. *See id*. ¶¶ 31-33, 88-90. Settlement Class Members who do not exclude themselves will release any and all claims arising from the Data Incident will be bound by the Settlement. *Id*. ¶ 75.

### C. **Notice and Settlement Administration**

After gathering competitive bids, and subject to Court approval, the Parties have agreed to use Simpluris as the Settlement Administrator. *Id*. ¶ 37. The Notice plan requires direct notice be provided by U.S. mail to the addresses contained in Defendant' records and previously used to provide initial notice of the Data Incident. *Id*. ¶¶ 40, 74. Within thirty (30) days of the date when the Preliminary Approval Order (S.A., Ex. C) is entered, the Settlement Administrator will send the Short Form Notice (S.A., Ex. A) to Settlement Class Members. *Id*. ¶ 73. For any Notices returned as undeliverable, the Settlement Administrator will use reasonable efforts (e.g., skip tracing) to identify an updated mailing address and re-mail the postcard if one is identified. *Id*.

The Settlement Administrator will also establish a dedicated Settlement Website, which will contain the Settlement Agreement, the Long Form Notice, Plaintiff's this Motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiff's motion for an award of attorneys' Fee Award and Costs and Service Award, and the operative complaint in this Action. *Id.* ¶ 44. The Settlement Website will also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator. *Id.* Finally, Settlement Class Members will be able to submit claims online via Settlement Website and the Settlement Website will include a mechanism by which Settlement Class Members can elect to receive their *Pro Rata* Cash Payment electronically. *Id.*

### D. Exclusion & Objection Procedures

The timing of the Notice is structured to provide that Settlement Class Members have adequate time to review the terms of the Settlement Agreement, elect to receive their Cash Fund Payment electronically, and decide whether they would like to opt-out or object. *See* Miller Decl. ¶ 10.

#### 1. Requests for Exclusion

To request exclusion from the Settlement, a Class Member must, within 60 days from the Notice Deadline, make their request in writing, including the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement. S.A. ¶¶ 26, 75.

#### 2. Objections

To object to the Settlement, a Class Member must, within 60 days from the Notice Deadline, submit their objection(s) in writing to the Settlement Administrator. *Id.* ¶¶ 25, 76. The

written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (viii) the signature (or electronic equivalent) of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* ¶ 76.

The procedures and specific deadlines for filing exclusion requests and objections will be identified in the Short Form Notice directly sent to Class Members, and will be described in more detail in the Long Form Notice that will be available on the Settlement Website. *Id.* ¶¶ 22, 43, 75-76. The proposed Notice will include, in a manner that is understandable to potential class members, information regarding: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Miller Decl. ¶ 14.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), any proposed settlement in a class action must be approved by the court. "The approval of a class-action settlement agreement is a 'two-step process, which first requires the court to make a preliminary determination regarding the

fairness, reasonableness, and adequacy of the settlement terms.'" *Meaden v. HarborOne Bank*, No. 23-cv-10467, 2023 U.S. Dist. LEXIS 87154, at *3 (D. Mass. May 18, 2023) (citation omitted). "The second step in the settlement approval process requires a fairness hearing, after which the court may give final approval of the proposed settlement agreement." *Meaden*, 2023 U.S. Dist. LEXIS 87154, at *3 (citation omitted).

In assessing whether to preliminarily approve a class action settlement, courts in the First Circuit evaluate four factors: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (quoting *In re Lupron Mktg. and Sales Prac. Litig.,* 345 F.Supp.2d 135, 137 (D. Mass. 2004)). These factors are considered with the understanding that settlement of complex cases is generally favored. *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) ("Settlement agreements enjoy great favor with the courts as a preferred alternative to costly, time-consuming litigation." (internal citation and quotations omitted)).

Here, each of those factors support preliminary approval of Plaintiff's Settlement with AIC.

### A.  The Proposed Settlement is Fair, Reasonable, and Adequate

When evaluating whether the settlement is within the range of reasonableness, courts consider the reasonableness of the settlement in light of the possible recovery in the litigation and risks of the litigation. *Hill v. State St. Corp.*, No.1:09-cv-12146-GAO, 2014 U.S. Dist. LEXIS 179702, at *25-26 (D. Mass. Nov. 26, 2014). In analyzing these factors, the issue for the court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the particular case. *Id*.

Here, the recovery is within the range of reasonableness given the complexities and risks

of continued litigation, including the uncertainty of a greater recovery against AIC. The value achieved through the Settlement Agreement is guaranteed, while the chances of prevailing on the merits are uncertain. Though Plaintiff believes in the merits of her case, she also understands that AIC will assert a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—such as class certification, which  has been denied in other data breach cases. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *94 (D.S.C. May 14, 2024).[2] Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 U.S. Dist. LEXIS 155137, at *8 (D. Minn. Nov. 17, 2015).

This Settlement is designed to provide relief at the heart of the harm of a breach—reimbursement for the actual misuse of data, and measures to prevent the future risk that the stolen data will be used for fraud or identity theft. Indeed, the Settlement provides substantial relief for data breach injuries by providing benefits including: (1) a *Pro Rata* Cash Payment estimated at $50; (2) reimbursement for Out-of-Pocket Losses due to the misuse of data or efforts to prevent the misuse of data; and (3) Credit Monitoring Services including two years of one-bureau credit monitoring, dark web monitoring, real-time inquiry alerts and $1 million in identity theft insurance. S.A. ¶¶ 11, 58-61.

As the foregoing makes clear, this Settlement is in the range of reasonableness warranting

---

[2] Plaintiff note the court in *Blackbaud* found a lack of ascertainability, which is not at issue here because AIC maintains the very data—due to Defendant's direct relationships with the Class—necessary to determine who was the subject of the Data Incident and what Personal Information was taken for each Settlement Class Member.

notice to the Settlement Class. Class actions are regularly certified for settlement. In fact, numerous similar data breach class actions have been recently certified on a national basis. *In re Retina Grp. of Wash. Data Sec. Incident Litig.*, No. DKC 24-0004, 2025 U.S. Dist. LEXIS 139159, at *7-8, *25 (D. Md. July 21, 2025) (finally approving data breach settlement providing reimbursement for losses up to $5,000, credit monitoring, or an alternative cash payment); *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-cv-2070, 2025 U.S. Dist. LEXIS 105490, at *27 (S.D. Ohio Apr. 11, 2025) (similar); *In re Fortra File Transfer Software Data Sec. Breach Litig.,* (794 F. Supp. 3d 1203, 1220, 1226 (S.D. Fla. Feb. 11, 2025) (similar); *In re Onix Grp., LLC Data Breach Litig.*, NO. 23-2288-KSM, 2024 U.S. Dist. LEXIS 225686, at *7-8. *48 (E.D. Pa. Dec. 13, 2024) (finally approving data breach settlement providing 12 months credit monitoring, losses up to $5,000 or a pro *rata* cash payment).

Given the reasonableness of the Settlement when weighed against the risks of continued litigation, the Settlement is within the range of reasonableness warranting preliminary approval.

### B.  The Settlement Satisfies the Four Preliminary Approval Factors

Further evidencing the reasonableness of the Settlement and the appropriateness of preliminary approval at this stage, the Settlement also meets all four factors courts in this Circuit use to evaluate preliminary approval of a Settlement: *M3 Power*, 270 F.R.D. at 62 (listing the factors as "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."). Here, the Class meets the requirements of Rule 23 and warrants certification.

*1.   The Proposed Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations*

The first factor considers whether the proposed Settlement "is the result of serious, informed arm's length negotiations" entitling the Settlement to a presumption of reasonableness.

*New England Biolabs*, 2022 U.S. Dist. LEXIS 244587, at *9; *Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech.*, No. 3:15-cv-30024, 2020 U.S. Dist. LEXIS 53643, at *11 (D. Mass. Mar. 27, 2020) ("A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel.")

The presumption of reasonableness applies to this case because the Settlement was the result of three months of arm's-length negotiations informed by the exchange of informal discovery which only occurred after the Parties briefed Defendant's motion to dismiss. Miller Decl. ¶¶ 5-8. Even after reaching an agreement on the central terms, the Parties spent months fully negotiating the finer points of the Settlement Agreement. *Id*. ¶ 7. Thus, and considering proposed Class Counsels' extensive investigation of Plaintiff's claims and experience in data breach litigation (*see id.* ¶¶ 4, 21-26, Ex. 2), the Parties were able to carry out settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

  2.   *The Proposed Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations*

In assessing the sufficiency and meaningfulness of discovery, courts consider whether sufficient information has been exchanged for the parties to make an intelligent judgment about settlement. *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010). Here, the parties reached the proposed Settlement after engaging in extensive informal discovery. *See* Miller Decl. ¶¶ 5-6. The information Plaintiff received from AIC, along with the data obtained from proposed Class Counsel's pre-suit investigation, provided Plaintiff's counsel with sufficient information to evaluate the strengths and weaknesses of Plaintiff's and the Settlement Class members' claims and AIC's defenses and assess the reasonableness of the Settlement. *Id.* ¶¶ 4-8, 21-26.

3. *The Parties to the Settlement Are Highly Experienced in Data Breach Litigation*

The third factor courts evaluate in determining whether to preliminarily approve a class action settlement is the opinion of experienced counsel. *M3 Power*, 270 F.R.D. at 62. Courts give significant weight to the judgment of experienced counsel who have engaged in arms' length settlement negotiations. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (similar).

Here, proposed Class Counsel are experienced class action litigators with significant experience litigating data breach actions specifically. Miller Decl. ¶¶ 21-26. Courts have recognized proposed Class Counsel's experience in this area of law and have repeatedly adjudged proposed Class Counsel adequate under Rules 23(a)(4) and 23(g). *Id.* Proposed Class Counsel have demonstrated through this litigation that they are well-versed in data breach and privacy law and have prosecuted this case with vigor and commitment. Thus, this factor supports preliminary approval.

4. *Settlement Class Objections*

The fourth factor considers Plaintiff's and the Class's reaction to the Settlement. This factor is more relevant at final approval after notice has been issued and the Class has been given an opportunity to object to the proposed settlement. *Lupron,* 345 F.Supp.2d at 137.

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In preliminarily approving a Class action settlement, the Court must "also determine whether to certify the class for settlement purposes." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (internal citation omitted). Courts have repeatedly found

data breach classes meet the class certification requirements. *Attias v. CareFirst, Inc.*, 346 F.R.D. 1 (D.D.C. 2024); *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 709 (W.D. Ky. Mar. 29, 2024); *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022).

In considering whether to certify a Settlement Class, courts look to Rule 23 of the Federal Rules of Civil Procedure. *See Amchem*, 521 U.S. at 620-21. Rule 23(a) creates four threshold requirements applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a)(1)-(4); *see also id.* at 613. Additionally, the proposed class must meet one of the requirements of Rule 23(b). *Amchem*, 521 U.S. at 613. Where, as here, a Rule 23(b)(3) damages class is proposed, plaintiffs must show "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are generally referred to as "predominance" and "superiority." Here, as described below, the Rule 23(a) and (b) requirements are satisfied, and the Court should certify the Settlement Class.

### A.  The Settlement Class Meets the Requirements of Rule 23(a)

Rule 23(a) provides four prerequisites that any proposed class must meet. These prerequisites are: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defense of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a)(1)–(4). The proposed Settlement Class here meets all four Rule 23(a) requirements.

### 1. *Numerosity*

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'" *Meaden*, 2023 U.S. Dist. LEXIS 87154, at *5 (citation omitted). Here, the Class is both so numerous that joinder is impracticable. The Settlement Class consists of approximately 11,822 individuals, far surpassing the threshold number of 40. *Id.* Moreover, all Settlement Class Members have already been identified by AIC in its investigation of the Data Breach and its issuance of notice to affected individuals. *See Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 127-28 (S.D.N.Y. 2011) (holding defendants' business records may be used to ascertain class members). Numerosity is met here.

### 2. *Commonality*

Under Rule 23(a)(2), commonality is met where the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 347 (2011).

Here, the Settlement Class shares numerous common questions of law and fact, and the answers to those common questions will have classwide effect. To start, all Settlement Class Members are current or former students of AIC whose Personal Information was affected by the Data Incident. Consequently, Plaintiff and the Class suffered similar injuries, and face common questions including: (i) whether AIC owed Plaintiff and the Class a duty to reasonably secure their Personal Information; (ii) whether AIC breached its duty by implementing inadequate data security, (iii) whether AIC breached a duty and whether such a breach caused Plaintiff's and the Class's injuries; (iv) whether Plaintiff and the Class suffered harm due to the theft and potential

misuse of their Personal Information; and, (v) whether Plaintiff's and the Class's damages are reasonably quantifiable.

The existence of several common legal questions and the overwhelmingly similarly factual issues presented by the Class's claims suffices to meet commonality here.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To establish typicality, the plaintiffs need only demonstrate that 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *M3 Power*, 270 F.R.D. at 54. "The claims of the class representative and the class overall must share essential characteristics, but they need not be precisely identical." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass.), *affd*, 809 F.3d 78 (1st Cir. 2015).

The Settlement Class Representative is typical of the Settlement Class because her claims result from a similar course of conduct, namely, AIC's alleged failure to reasonably secure its students' Personal Information. *See Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676, 2024 U.S. Dist. LEXIS 43851, at *10 (E.D. Pa. Mar. 13, 2024) (typicality satisfied where "each named plaintiff suffered unauthorized disclosure of their sensitive information, an identical harm to all class member"). Plaintiff and the Class have claims based on a common legal theory that AIC owed them a duty to reasonably secure their sensitive data but failed to do so. Finally, Plaintiff and the Class allege the same resulting harm from AIC's alleged wrongdoing—the theft of their Personal Information. Typicality here is satisfied.

### 4. Adequacy

Rule 23(a) requires that the "representative parties will fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement has two parts. The plaintiffs 'must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *M3 Power*, 270 F.R.D. at 55. Here, adequacy is readily met as Plaintiff satisfies both requirements. First, Plaintiff's interests align with, and are not adverse or antagonistic to, those of the Settlement Class members. Plaintiff seeks to hold AIC accountable for, among other things, its failure to safeguard Personal Information, which is the same alleged wrongdoing that AIC caused the Class.

Second, proposed Class Counsel are qualified, experienced, and competent in consumer rights and data breach litigation, and have a successful track record in analogous cases to that here. Miller Decl. ¶¶ 15, 21-26. Proposed Class Counsel and Plaintiff have diligently advanced the interests of the Class, including in investigating the Data Incident and resolving the case through Settlement. *Id*. ¶¶ 4-9. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

## B.  The Settlement Class Meets the Requirements of Rule 23(b)

Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. "The superiority inquiry [ ] ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Relafen Antitrust Litig*., 218 F.R.D. 337, 346 (D. Mass. Nov. 10, 2003) (citation omitted). Here, Plaintiff readily meets both requirements.

*1.  Common Issues Predominate Over Individual Issues*

A (b)(3) settlement class must show that common questions "predominate over any questions affecting only individual [class] members." *Amgen Inc. v. CT Ret. Plans & Trust Funds*, 568 U.S. 455 at 459. Predominance "does not require that each element of the claims [be] susceptible to class-wide proof" but only that "the individualized questions . . . [do] not 'overwhelm' the common ones." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 537 (D. Mass. 2017) (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, common issues predominate over individual issues because each Settlement Class Member would rely on common factual evidence to establish AIC's liability. Each Settlement Class member's claim centers on AIC's alleged inadequate data security which, Plaintiff alleges, AIC knew or should have known could result in a data breach. These facts would establish AIC's duty and breach of duty on a classwide basis and, proof of those facts depend exclusively on AIC's knowledge and actions. Thus, those elements of each Settlement Class Member's claim are resolvable in a "single stroke" and do not depend on any individualized issue. *Dukes*, 564 U.S. at 347.

Additionally, the common issues concerning causation and damages predominate. Whether AIC's actions caused the Data Incident depends on common evidence. Further, as other courts have recognized, Plaintiff can establish damages on a Class basis using models to measure the diminished value of the stolen data and the lost time and effort incurred responding to the breach.

*See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 893-894 (11th Cir. 2023) (approving plaintiffs' method for measuring class damages due to a data breach).

### 2.    A Class Action Is the Superior Device for Adjudicating this Case

Rule 23(b) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." This case presents the "quintessential class action" because it "involves thousands of plaintiffs who were subjected to the same . . . wrongdoing and whose recovery is likely to be small" and "absent a class action . . . claimants would likely not seek legal redress." *Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 103 (Fed. Cl. 2017).

Where a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would." *Coco v. Inc. Vill. of Belle Terre,* 233 F.R.D. 109, 116 (E.D.N.Y. Nov. 26, 2005). "The superiority inquiry thus ensures that litigation by class action will 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Hebert v. Vantage Travel Serv.*, 334 F.R.D. 362, 374 (D. Mass. Apr. 1, 2019) (citation omitted).

Here, class resolution is superior to other available means for the fair and efficient adjudication of the claims asserted against AIC. First, the potential damages suffered by the approximately 11,822 class members are relatively low-dollar amounts and would be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individuals claims. *In re Mednax Servs*., No. 21-MD-02994-RAR, 2024 U.S. Dist. LEXIS 65379, at *19-20 (S.D. Fla. Apr. 10, 2024) (superiority satisfied in data breach settlement where the "amount in dispute for individual class members is too small, the technical issues involved are too complex, and the expert testimony and document review is too costly" and "individual prosecution

of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings."). Second, there is little doubt that resolving all class members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well-versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy.

Because the Settlement satisfies all of Rule 23's requirements, the Court should conditionally certify the Settlement Class.

## VI.    CONCLUSION

Plaintiff respectfully request that this Court (1) conditionally approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiff Kelly Shea as Class Representatives, (3) appoint Plaintiff's counsel as Class Counsel, (4) provisionally certify the Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (6) set deadlines for Class Members to submit objections and requests for exclusion, and (7) set a date for a Final Approval Hearing. A proposed Preliminary Approval Order is attached to the Settlement Agreement, at **Exhibit D**.


Dated: March 16, 2026                          Respectfully submitted,

                                               By: */s/ Cassandra P. Miller*
                                                   Cassandra P. Miller (*pro hac vice*)
                                                   STRAUSS BORRELLI PLLC
                                                   One Magnificent Mile
                                                   980 N Michigan Avenue, Suite 1610
                                                   Chicago IL, 60611
                                                   Telephone: (872) 263-1100
                                                   Facsimile: (872) 263-1109
                                                   cmiller@straussborrelli.com

                                               *Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Cassandra P. Miller, hereby certify that on March 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 16th day of March, 2026.

STRAUSS BORRELLI PLLC

By:  */s/ Cassandra P. Miller*
        Cassandra P. Miller
        One Magnificent Mile
        980 N Michigan Avenue, Suite 1610
        Chicago IL, 60611
        Telephone: (872) 263-1100
        Facsimile: (872) 263-1109
        cmiller@straussborrelli.com