## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **KELLY SHEA**, on behalf of herself and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>**AMERICAN INTERNATIONAL COLLEGE**,<br><br>        Defendant. | Case No. 1:24-cv-11449-AK<br><br>Judge Angel Kelley |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS AND SERVICE AWARD

Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d), Plaintiff Kelly Shea ("Plaintiff"), individually and on behalf of the putative class, submits this Memorandum of Law in Support of Plaintiff's Motion for Attorney Fees and Costs and Service Award (the "Motion").

## I.   INTRODUCTION

This class action lawsuit arises out of a data security incident which occurred from on or about November 2023 to on or about December 2023 (the "Data Incident"[1]) involving American International College's ("AIC" or "Defendant") computer network. After hard-fought litigation and protracted, arms' length settlement negotiations, Plaintiff and Class Counsel achieved a successful result in this action in light of significant litigation and non-litigation risks. Through Class Counsel's efforts, the Settlement provides meaningful and concrete relief to approximately 11,815 Settlement Class Members, including a *Pro Rata* Cash Payment, estimated at $50, from a non-reversionary Settlement Fund of $315,000.00. Settlement Agreement[2], ECF No. 44-1 ("S.A.") ¶¶ 59-61. The Court-approved Notice of the Settlement has been disseminated to the Class, and the Final Approval Hearing is scheduled for August 6, 2026. (ECF. No. 46).

Class Counsel now respectfully moves the Court for an award of attorneys' fees in the amount of $105,000.00, which represents one-third (33.33%) of the Settlement Fund and a modest lodestar multiplier of approximately 1.21. This fee request is contemplated by the Settlement Agreement, and Class Counsel apprised the Court of this request in its Motion for Preliminary Approval on March 16, 2026. S.A. ¶ 90; (ECF 44-1). This fee request was also clearly delineated in the Long Form Notice to the Settlement Class (ECF 44-1, Ex. B), which is posted prominently on the Settlement website. As of this filing, no Settlement Class Member has objected to the

---

[1] Unless otherwise indicated, the capitalized terms contained herein have the same meaning as those in the Parties' Settlement Agreement.
[2] The Parties' Settlement Agreement (ECF No. 44-1) was filed with Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 43).

Settlement or the requested Attorney Fees and Costs, or service award. Declaration of Plaintiff's Counsel in Support of Motion for Attorney Fees and Costs and Service Award ("Fee Decl.") ¶ 4.

When applying the relevant factors and standards, this request falls well within the range of reasonableness. Class Counsel's fee and expense request is fair and reasonable under both a percentage of the fund approach and a lodestar approach. In addition to the attorneys' fees, Plaintiff's Counsel also seeks an award of reasonable out-of-pocket case expenses in the amount of $630.00. *Id*. ¶ 13. Plaintiff also seeks a service award for the Class Representative in the amount of $5,000.00, for the Plaintiff's efforts advancing this Action on behalf of the Settlement Class.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiff refers this Court to, and hereby incorporates, Plaintiff's Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement filed on March 16, 2026 (ECF No. 43) ("Preliminary Approval Motion") and the accompanying Exhibits, including the Parties' Settlement Agreement filed in conjunction therewith.

## III.    SUMMARY OF THE SETTLEMENT

As explained previously in Plaintiff's Preliminary Approval Motion, the Settlement provides for substantial relief to a large class of persons impacted by the Data Incident.

### A.  Definition of the Class

The Settlement Class is comprised of approximately 11,815 individuals. Preliminary Approval Motion at 1.  The proposed Settlement Class is defined as follows:

> All individuals residing in the United States whose Personal Information was potentially compromised in the Data Incident discovered by Defendant in November 2023, including all those individuals who received notice of the Data Incident. S.A. ¶ 38.

The Settlement Class specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) Defendant, its subsidiaries, parent companies, successors,

2

predecessors, and any entity in which Defendant or its parents have a controlling interest; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.*

### B. The Settlement Terms and Benefits to the Settlement Class

#### 1. Settlement Fund

AIC will make available to the Settlement Class a generous non-reversionary Settlement Fund of $315,000.00. *Id.* ¶¶ 41, 46. The Settlement Fund will be used to pay for the following: (1) all Notice and Administrative Expenses (including applicable taxes, if any); (2) a Court-approved Attorney Fees and Costs and Service Award; (3) the costs of the Credit Monitoring services; and (4) Valid Claims for Cash Payment B (up to $5,000.00 per person). S.A. ¶ 48.

#### 2. Identity Theft Protection and Credit Monitoring Package

All Settlement Class Members who submit a Valid Claim Form are eligible to receive two (2) years of CyEx credit monitoring, with identity-theft insurance.  S.A. ¶¶ 13, 58.

#### 3. Cash Payments

In addition to the Credit Monitoring services, the Settlement provides cash payments tailored to compensate eligible Settlement Class Members affected by the Data Incident:

#### a) Compensation for Out-of-Pocket Losses

From the Settlement Fund, Settlement Class Members can submit a claim for unreimbursed Out-of-Pocket losses up to $5,000.00 incurred as a result of the Data Incident. S.A. ¶ 57. To receive this reimbursement, Settlement Class Members with Out-of-Pocket Losses must submit documentation supporting their claims, such as receipts or other documentation not "self-prepared" by the claimant that document the costs incurred. *Id.*

### b) Pro Rata Cash Payment

In lieu of a claim for Out-of-Pocket Losses, Settlement Class Members can elect to make a claim for a *Pro Rata* Cash Payment, estimated at $50.00, with the final payment amounts adjusted up or down depending on the number of claims submitted. *Id*. ¶ 56.

### 4. Additional Security Measures

To protect the Settlement Class's Personal Information against future breaches, the Settlement also provides assurances that AIC has implemented certain changes to its information security, valued at approximately $65,000.00, to secure its computer network's systems and environments. S.A. ¶ 60. The costs associated with these security-related measures will be paid by AIC separate and apart from the other settlement benefits and separate and apart from the Settlement Fund. *Id*.

### C. Preliminary Approval and Notice

After the Court granted preliminary approval of the Settlement on March 24, 2026. (ECF No. 45). Class Counsel, along with the Settlement Administrator, Simpluris, finalized the notice documents and settlement website, and issued notice on April 23, 2026. Fee Decl. ¶ 5. The objection and opt-out deadlines are on July 22, 2026, the Claims Deadline is on July 22, 2026, and the final approval hearing is scheduled for August 6, 2026. (ECF No. 45). As of this filing, no Settlement Class Member has excluded themselves from the Settlement and none have objected. *Id*. ¶ 4.

## IV.    ARGUMENT

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In the First Circuit, the percentage of fund methodology, where a percentage of the settlement is deducted from the common settlement fund and used to compensate the attorneys for their efforts, is favored

and appropriate in common fund cases. *Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 3 (D. Mass. Mar. 23, 2020).

Here, the requested attorneys' fees are fair and reasonable given the results Class Counsel achieved for the Settlement Class. Plaintiff seeks Court's approval of attorneys' fees of one-third (33.33%) of the Settlement Fund ($105,000.00) and litigation expenses of $630.00. This request is within the range of fee requests that have been approved in this judicial district. *See In re Neurontin Mktg. & Sales Practices Litig.*, No. 04-cv-10981-PBS, 2014 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *see also Mazola v. May Dep't Stores Co.,* No. 97 Civ. 10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions.").  As Plaintiff will demonstrate, the request should be approved here.

### A.  The Court Should Approve a Fee Award from the Settlement Fund

The right of Class Counsel to be paid from a settlement fund derives from the long-accepted principal that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The First Circuit has held that in contingent fee cases, the "percentage of the fund" approach is appropriate because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources and "better approximates the workings of the marketplace." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (approving the percentage of fund approach as an acceptable method and recognizing "that use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] ... distinct advantages");

*Bussie v. Allamerica Financial Corp.,* 1999 WL 342042 (D. Mass. May 19, 1999) (Gorton, J.) (unreported opinion); *see In re Centennial Techs. Litig.,* 20 F.Supp.2d 119 (D.Mass.1997) (Keeton, J.).

**B. The Requested Fee of One-Third of the Net Settlement Fund is Fair and Reasonable**

In this Court and in the First Circuit, an award of one-third the common fund has been held to be appropriate in class action cases, including cases where settlement administration expenses have not been removed from the total common fund analysis. *See, e.g.* Herb v. Homesite Grp. Inc., No. 1:22-cv-11416, 2024 U.S. Dist. LEXIS 135170, at *12-13 (D. Mass. July 31, 2024) (approving one-third of the class action settlement's $725,000 common fund); *Dahl, et al. v. Bain Capital Partners, LLC, et al*., 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33.33% of the settlement fund) (Dkt. 1095); *In re Loestrin 24 Fe Antitrust Litig*., 1:13-md-2472- WES-PAS, 2020 WL 4035125 at *4-5 (D.R.I. July 17, 2020) *report and recommendation adopted*, No. 1:13-md-2472-WES-PAS, ECF No. 1462 (D.R.I. Sept. 1, 2020) (same); *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 77-82 (D. Mass. 2005) (same).

As the court explained in *Relafen*, "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable" but noted that factors bearing on the reasonableness of a fee request include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Relafen*, 231 F.R.D. at 79 (citing *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 n.1 (3rd Cir. 2000)). This Court further said that "although not controlling precedent, the listed factors are

helpful in framing the Court's analysis." *Id*. Class Counsel employs those factors here and as shown below, they strongly support the requested one-third fee as appropriate, fair and reasonable.

### 1. The Size of the Fund Created and Number of Persons Benefitted

Based on the $315,000.00 non-reversionary common fund and the Settlement Class composed of approximately 11,815 Settlement Class Members, the estimated gross per-capita recovery is approximately $26.64 per class member before deductions. After subtracting the requested court-approved Attorney Fees and Costs, the Service Award, and Notice and Administration Expenses[3], from $315,000.00, the estimated net recovery is approximately $14.88 per class member, assuming full participation.  These estimates are based on information available as of the date of this filing. The claims period has not yet expired, and the final per-capita recovery will depend on the number of Valid Claims ultimately submitted; actual recoveries are therefore expected to be higher given typical claims rates in data-breach settlements.

Even without accounting for the additional value of Credit Monitoring Services or reimbursement for Out-of-Pocket Losses, the estimated per-capita recovery compares favorably to data-breach settlements that have been approved by courts nationwide. *See e.g.*, *Lopez v. NLP, LLC*, No. 2:24-CV-06403, 2025 U.S. Dist. LEXIS 270892, at *33-34 (C.D. Cal. Dec. 4, 2025) (finding that the plaintiffs' case law survey demonstrating a range of per class member recovery of $1.31 to $55.46 "comports with the Court's observations about other data breach settlements") (collecting cases); *Tate v. Eyemed Vision Care, LLC*, 2025 U.S. Dist. LEXIS 145042, at *14 (S.D. Ohio July, 29, 2025) ($7.22 per class member); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 794 F.Supp.3d 1203, 1212, 1215 (S.D. Fla. Feb. 11, 2025) ($7.00 per class member); *Cain v. CGM*, 1:23-CV-02604, 2025 U.S. Dist. LEXIS 196873, at *7-9, *15 ($4.76 per class

---

[3] Simpluris estimates that Notice and Administrative Expenses, including Credit Monitoring Services, will total $28,973.00. Fee Decl. ¶ 12.

member); *In re Mednax Servs. Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-2994-RAR, 2024 U.S. Dist. LEXIS 65379, at *10-11, 15 (S.D. Fla. Apr. 10, 2024) ($2.21 per class member); *Beasley v. Ttec Servs. Corp.*, (case nos. omitted), 2024 U.S. Dist. LEXIS 29759, at *13 (D. Colo. Feb. 21, 2024) ($12.63 per class member); *Sung v. Schurman Fine Papers*, No. 17-cv-02760-LB, 2018 U.S. Dist. LEXIS 112874, at *22-23 (N.D. Cal. July 5, 2018) ($17.59 per member).

Based on the size of the breach and per-capita figures, the Settlement presents a robust relief package and valuable outcome for the Settlement Class compared to other recent data breach class action settlements. Additionally, it provides relief for the types of injuries claimed by individuals affected by a data breach; namely, compensation for out-of-pocket losses, credit monitoring to protect against fraud, and compensation for the loss of privacy. These significant benefits support the Class Counsel's fee request.

### 2. The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or the Fees Requested by Counsel

As of the date of this filing, no Settlement Class Members have requested exclusion from the Settlement and none have objected to the Settlement's terms. Fee Decl. ¶ 4.

### 3. Class Counsel's Skill and Efficiency

Class Counsel's skill, experience and efficient lawyering helped Plaintiff favorably settle her claims. The goal of the percentage fee-award is to ensure that competent counsel undertakes risky litigation to recover for plaintiffs who may otherwise go uncompensated. In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015). Here, the efforts undertaken by Class Counsel satisfy this standard. Indeed, Class Counsel vigorously

prosecuted this Action on behalf of the Settlement Class, including litigating a motion to dismiss and engaging in hard-fought litigation with Defendant's Counsel. *See* Preliminary Approval Motion at 3-4. Furthermore, Class Counsel is highly experienced in the field of consumer class actions, and data breach litigation in particular. *See* ECF Nos. 44 ¶¶ 21-26, Ex. 2. (44-2) (listing qualifications of Class Counsel). Accordingly, Class Counsel's experience and qualifications support the fee request. *See Relafen*, 231 F.R.D. at 80 (observing skill of class counsel).

### 4. The Complexity and Duration of the Litigation

Data breach litigation presents significant challenges to plaintiffs. *See, e.g., Reed v. ALN Med. Mgmt. LLC,* 2026 U.S. Dist. LEXIS 107726, at *13-14 (D. Neb. May 15, 2026) ("damages from a data breach in a complex class action lawsuit is an under-developed area of law, and data breach cases are risky, expensive, and complex."); *In re Netgain Tech., LLC, Consumer Data Breach Litig.,* No. 21-cv-1210, 2025 U.S. Dist. LEXIS 216501, at *21 (D. Minn. Nov. 3, 2025) (noting "data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims."); *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 U.S. Dist. LEXIS 160592, at *34 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases").

Indeed, the highly technical aspects of investigating a data breach (*i.e.,* the means by which Defendant's systems were breached), not to mention the knowledge of class action procedure required to achieve certification, let alone settlement, required the specialized skills and experience possessed by Class Counsel. While Plaintiff is confident in the merits of her claims, she faced several strong legal defenses and difficulties in demonstrating causation and injury, as evidenced by Defendant's motion to dismiss. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and putative class members. Further, given the complexity of

9

the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. The general risks of litigation are further heightened in the data breach arena. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles—even just to make it past the pleading stage. As one federal district court observed in finally approving a data breach settlement with similar class relief and similar attorneys' fees:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Plaintiffs also faced the risk that [defendant] would successfully oppose class certification, obtain summary judgment on one or more of their claims, or win at trial or on appeal. Also, the cost for [defendant] and Plaintiffs to maintain the lawsuit would be high, given the amount of documentary evidence as well as the expert costs both parties would incur in the context of class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981).

*Fox v. Iowa Health Sys*., No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (also approving attorneys' fees and costs in the amount of $1,575,000); *see also In re Phila. Inquirer Data Sec. Litig.*, NO. 24-2106-KSM, 2025 U.S. Dist. LEXIS 48541, at *36 (E.D. Pa. Mar. 18, 2025) (noting "data breach cases are inherently risky and present unique challenges to establish standing and obtain class certification."); *In re Fortra File Transfer Software Data Sec. Breach Litig*., 794 F. Supp. 3d 1203, 1220 (S.D. Fla. Feb. 11, 2025) ("given the complexity of the claims and arguments here, a lengthy trial would likely be required before Settlement Class Members could recover. Maintaining class certification through trial 'is another over-arching risk' as well"(citation omitted)). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-mn-02972-JFA; MDL No. 2972*,* 2024 U.S. Dist. LEXIS 234064, at *46 (D.S.C. Dec. 30, 2024).

### 5.    The Risk of Nonpayment

The risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award.  This factor is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys who prosecute them, and it embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Lupron Mktg. and Sales Practices Litig.*, MDL No. 1430, 2005 U.S. Dist. LEXIS 17456, at *15 (D. Mass. Aug. 17, 2005) ("[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award") (internal quotation marks and citation omitted).

The risk of a class action should not be viewed in retrospect, from the standpoint of a settlement, but as it existed at the outset of the litigation.  *See e.g.*, *In re Dairy Farmers of Am.*, 80 F. Supp. 3d 838, 847-48 (N.D. Ill. 2015) ("When determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit."). Class Counsel took this highly complex class action case on a purely contingent basis since this case's inception in June 2024. Fee Decl. ¶ 6. As such, Class Counsel assumed significant risk of nonpayment or underpayment. *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090, 2023 U.S. Dist. LEXIS 93286, at *5 (D. Mass. Mar. 31, 2023) ("Class Counsel's assumption of the risk of nonpayment supports the reasonableness of the requested fee.")

Class Counsel's requested fees were not guaranteed—the retainer agreements Class Counsel has with Plaintiff do not provide for fees apart from those earned on a contingent basis, and in the case of class settlement, approved by the Court. The time Class Counsel devoted to vigorously prosecuting this action could have been spent on other fee-generating matters. Fee Decl.

11

¶¶ 6-9. Had Defendant prevailed on the merits, on class certification, or on appeal, Class Counsel might have recovered nothing for the time and expense they invested in representing the Settlement Class.

### 6. Class Counsel's Time Invested.

Class Counsel's commitment of time and resources in this case supports their requested fee award. Based upon the contemporaneous time records of counsel, Class Counsel has invested 132.7 hours prosecuting this Action, resulting in a lodestar of $87,107.50, which yields a lodestar multiplier of approximately 1.21. *Id*. ¶¶ 15-16. Moreover, the lodestar multiplier will decrease ahead of final approval as Class Counsel continues to assist with notice and claims administration, prepare and argue the motion for final approval, and appear in person for the final approval hearing. *Id*. ¶ 8. The additional necessary hours accrued will lower the lodestar multiplier, perhaps even resulting in there being no multiplier at all. *See id*.

Multipliers are an accepted means of enhancing a lodestar appropriately to reflect, for example, the scale of the results achieved by prevailing counsel or the risks counsel took in pursuing contingent fees. *Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 165 (D. Mass. Feb. 10, 2015). Moreover, courts in the First Circuit and throughout the country have routinely held that a modest lodestar multiplier such as that requested here supports a finding of reasonableness. *See, e.g., In re Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-cv-12548, 2020 U.S. Dist. LEXIS 106469, at *7 (D. Mass. June 17, 2020) (approving fee request, noting "the requested amount includes only a modest multiplier of the lodestar (1.20x) which is well within the range of multipliers typically allowed by this Court (1x to 2.7x)"); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, MDL No. 19-md-02878-NMG, 630 F. Supp. 3d 241, 246 (D. Mass. Sept. 19, 2022) ("[t]he typical range of the lodestar multiplier allowed by this Court is between one and 2.7.") *Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 184926, at *16 (D. Mass.

Nov. 8, 2017) (approving multiplier of 1.31); *see also In re Wawa, Inc. Data Sec. Litig.*, No. 2:19-cv-06019, 2026 U.S. Dist. LEXIS 9923, at *13 (E.D. Pa. Jan. 13, 2026) (approving multiplier of 1.36 in data breach action); *Medoff v. Minka Lighting, LLC,* No. 2:22-cv-08885, 2024 U.S. Dist. LEXIS 235592, at *4 (C.D. Cal. July 10, 2024) (approving multiplier of 1.07 in data breach action); *Reynolds v. Marymount Manhattan Coll.*, No. 1:22-CV-06846, 2023 U.S. Dist. LEXIS 191993, at *4 (S.D.N.Y. Oct. 23, 2023) (approving multiplier of approximately 1.1 in data breach action). Thus, Class Counsel's requested lodestar multiplier is within the range typically awarded by this Court and courts around the country.

### 7.  Awards in Similar Cases

Federal district courts across the country – including this Court -- have awarded similar attorneys' fees in data breach class actions involving non-reversionary common funds.  *See, e.g.* Final Approval Order and Judgment at 6, ECF. No. 39, *Kondo et al. v. Creative Services, Inc.,* Case No. 1:22-cv-10438-DJC (D. Mass. Sept. 7, 2023) (granting final approval of non-reversionary common fund data breach settlement and attorneys' fees of 33% of $1.2 million Settlement Fund); *In re Phila. Inquirer Data Sec. Litig.*, NO. 24-2106-KSM, 2025 U.S. Dist. LEXIS 48541, at *35-37, *41 (E.D. Pa. Mar. 18, 2025) (approving 33% fee award distribution of a common fund of $525,000, noting "[c]ourts using the percentage-of-recovery method to calculate attorneys' fees generally approve fees ranging 'from roughly 20-45%.'"); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 794 F. Supp. 3d 1203, 1223 (S.D. Fla. Feb. 11, 2025) (approving attorney's fees of 33.3%, of the $7,000,000.00 common fund and $39,237.40 in reasonable litigation costs); *Smith v. Apria Healthcare LLC*, No. 1:23-cv-01003, 2025 U.S. Dist. LEXIS 225320, at *14 (S.D. Ind. Nov. 17, 2025) (finally approving fee award of 33.33% of $6,375,000.00 common fund plus $39,897.57 in expenses, noting "[a]lthough the fee requested is slightly above 33.33%, an attorney's fee award of 33.57% is within range of the typical

13

contingency fee charged by class action lawyers."); *I In re Onix Grp., LLC Data Breach Litig.*, No. CV 23-2288- KSM, 2024 U.S. Dist. LEXIS 225686, at *7, *46-47 (E.D. Pa. Dec. 13, 2024) (approving attorney's fees of 33.3% of the $1,250,000 common fund and $12,032 in litigation expenses); *Holden v. Guardian Analytics, Inc.*, No.: 2:23-cv-2115, 2024 U.S. Dist. LEXIS 100349, at *4, *28, *38 (D.N.J. June 5, 2024) (approving attorney's fees of 33.3% of the $1,430,207.50 common fund and $9,101.19 in expenses).

As the above makes clear, the one-third (33.33%) fee sought here is squarely in line with other fee awards in this district, and in data breach cases across the country.

### C. Public Policy Considerations

Public policy considerations support awarding Class Counsel the requested fee award. There is a "significant societal interest" in holding defendants accountable through class action litigation. *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *23. Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the public." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 171 (D. Mass. 2014). The Settlement serves an important public policy concern by protecting consumers' interests in the privacy and confidentiality of their personal information and by causing AIC to improve its procedures for protecting these interests. Accordingly, compensating Class Counsel appropriately for bringing this action serves this important policy goal.

### D. Class Counsel's Expenses are Reasonable and Should Be Reimbursed

Counsel whose efforts create a common fund to benefit a class are entitled to recover from the fund "expenses. reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *In re Synthroid*, 264 F.3d 712, 722 (7th Cir. 2001). To be recoverable, the expenses must be "adequately documented and

14

reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Here, Class Counsel incurred $630.00 in litigation expenses. Fee Decl. ¶ 13. These expenses are well-documented, based on the firm's books and records and include, among other things, the various court filing fees. These expenses were modest, reasonable, and necessary for the prosecution of the case. Courts routinely authorize similar expenses.

### E.  The Requested Service Award Should Be Approved.

Plaintiff respectfully requests approval of a service award of $5,000 as the Class Representative. The service award is justified and reasonable considering the proposed recipient's efforts. Service awards serve an important function in advancing class action suits. *In re Relafen*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted); *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *24-25 at *7 ("Incentive awards serve an important function in promoting class action settlements[.]"). In granting incentive awards, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves. *Bussie v. Allmerica Fin. Corp.*, No. 97-40204, 1999 U.S. Dist. LEXIS 7793, at *12 (D. Mass. May 19, 1999).

Here, Plaintiff agreed to serve as a Class Representative in an action that comes with the potential for public scrutiny and an impact on one's reputation and has been actively involved in advancing this litigation. Fee Decl. ¶ 20. Plaintiff actively participated in the litigation and settlement of this matter – including by providing a detailed overview of her relationship with Defendant, documents and details regarding the nature and timing of the identity theft she experienced, and the mitigation steps she had already undertaken. *Id*. Additionally, Plaintiff

15

maintained contact with counsel, answered counsel's many questions, and reviewed and approved both the agreement in principle and the final Settlement Agreement. *Id*. Plaintiff also put her personal reputation at risk, suing a former university, and put herself forward for public scrutiny. *Id*. Plaintiff was not promised a service award, nor did she condition her representation on the expectation of an incentive award. *Id*. Thus, Plaintiff's sustained involvement and cooperation helped advance the litigation and protect the interests of absent Class Members.

Finally, the requested $5,000.00 service award is modest, reasonable, and well within the range of incentive awards routinely approved in complex class actions in this District and throughout the First Circuit. *See Mongue v. Wheatleigh Corp*., No. 3:18-cv-30095, 2024 U.S. Dist. LEXIS 69928, at *17 (D. Mass. Apr. 16 2024) (approving $5,000 service award); *Anderson v. Team Prior, Inc*., No. 2:19-cv-00452, 2022 U.S. Dist. LEXIS 196144, at *17 (D. Me. Oct. 28, 2022) (same); *Cullinane v. Uber Techs., Inc*., No. 14-14750, 2020 U.S. Dist. LEXIS 38798, at *11 (D. Mass. Jan. 29, 2020) (same).

Accordingly, given Plaintiff's efforts in supporting the litigation, combined with the risks and burdens of serving as a class representative, the application for a $5,000 incentive award should be granted.

## V.     CONCLUSION

For the reasons stated, Class Counsel respectfully requests that the Court grant their Motion for Attorney Fees and Costs and Service Award.

Dated: June 8, 2026                     Respectfully submitted,

                                        By: */s/ Cassandra P. Miller*
                                             Cassandra P. Miller (*pro hac vice*)
                                             STRAUSS BORRELLI PLLC
                                             One Magnificent Mile
                                             980 N Michigan Avenue, Suite 1610

Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100
anthony@paronichlaw.com

*Attorney for Plaintiff and the Proposed Class*

17

## **CERTIFICATE OF SERVICE**

I, Cassandra P. Miller, hereby certify that on June 4, 2026, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record, below, via the ECF system.

DATED this 4th day of June, 2026.

STRAUSS BORRELLI PLLC

By: */s/ Cassandra P. Miller*
    Cassandra P. Miller (*pro hac vice*)
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    cmiller@straussborrelli.com